AO 91 (Rev. 5/85) Criminal Complaint

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 2 3 2006

LUTHER D. THOMAS, Clerk
By: SGV Deputy Clerk

**United States District Court**

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA
v.

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:-06-MJ-412

FIDENCIO PENA JACINTO
ALBERTO MUNOZ

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about March 23, 2006 in Cherokee County, in the Northern District of Georgia and elsewhere, the defendants did knowingly and intentionally combine, conspire, confederate and agree with each other and others to possess with the intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing five kilograms or more of cocaine, in violation of Title 21 United States Code, Section 846.

I further state that I am a Special Agent and that this complaint is based on the following facts:

Please see attached affidavit

Continued on the attached sheet and made a part hereof. (x) Yes () No

Thomas P. Smith
Signature of Complainant
Thomas Smith, Special Agent

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

March 23, 2006 at Atlanta, Georgia
Date City and State

Joel M. Feldman
United States Magistrate Judge
Name and Title of Judicial Officer
AUSA Erskine

Signature of Judicial Officer

## AFFIDAVIT

I, Special Agent Thomas Smith, Federal Bureau of Investiation, being duly sworn, state:

1. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I am therefore an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United Stated Code, Section 2516. I have been employed by the FBI for approximately one year. Prior to my work with the FBI, I was a Delaware State Trooper for approximately six years. In my capacity as a Delaware State Trooper, I received extensive and regular training on drug trafficking methods. I attended interdiction classes given by the Drug Enforcement Administration (DEA), basic narcotics investigators training, wiretap training, and received specific training on large-scale drug trafficking organizations. As a state trooper, I made approximately 100 arrests for drug violations, and participated in the execution of approximately 50 search warrants specifically relating to drug trafficking.

2. Over the past several days, the FBI has been monitoring a telephone carried by ARANDA-SALGADO. Based on these court-authorized electronic surveillance, it became clear that ARANDA-SALGADO was traveling to New York to pick up drug proceeds. Based on these intercepted calls, ARANDA-SALGADO then intended to drive the money to Georgia. It is believed that he would use this money to pay his drug suppliers. Specifically, on one intercepted call, he discussed how he owed over $1 million.

3. On March 22, 2006, the FBI monitored ARANDA-SALGADO as he traveled south from New York. Based on wire intercepts, it was apparent that he intended to drive all night.

4. On March 23, 2006, the FBI drove to ARANDA-SALGADO's residence. When they approached his residence at 267 Colony Center Drive in their vehicles, the Target Vehicle

pulled away from the residence and struck at least one of the Special Agents' cars. Shots were fired and a high-speed chase ensued. Agents chased ARANDA-SALGADO in the Target Vehicle at speeds that exceeded 100 miles per hour. Eventually, ARANDA-SALGADO was stopped in a parking lot where he exited the Target Vehicle and surrendered. It is believed that the Target Vehicle was the automobile that ARANDA-SALGADO used to drive from New York to Georgia with drug proceeds on March 22nd. The Target Vehicle has been secured and remains in police custody.

5. FBI agents entered ARANDA-SALGADO's residence to execute an arrest warrant for him at that address. At the time, agents did not know whether ARANDA-SALGADO was in the residence at 267 Colony Center Drive or in the vehicle that had fled from that location. Alberto MUNOZ answered the door at that address and told agents they could enter. Agents determined that neither defendant was ARANDA-SALGADO.

6. The first defendant, FIDENCIO PENA JACINTO, told agents that he recently delivered 30 to 32 kilograms of cocaine for ARANDA-SALGADO. In exchange, ARANDA-SALGADO promised to pay him $10,000. After JACINTO delivered the kilograms of cocaine to GORDO LNU, he returned to Georgia. ARANDA-SALGADO was only able to pay JACINTO $500.

7. According to MUNOZ, ARANDA-SALGADO asked him to travel to New York to pick up drug proceeds. He agreed and traveled to New York with ARANDA-SALGADO where he met with individuals that he knew to be drug dealers. On March 22nd, the drug proceeds were loaded into a rental car and MUNOZ and ARANDA-SALGADO then drove them to Georgia. MUNOZ knew that ARANDA-SALGADO was a drug trafficker and that the funds he helped transport were drug funds.